## Moore *v.* Yazoo & M. V. R. Co. *et al.*

(Division A.   March 16, 1936.)

[166 So. 395.   No. 32063.]

**Chalmers Potter,** of Jackson, for appellant.

May & Byrd, of Jackson, **E. C. Craig**, of Chicago, Ill., and **Burch, Minor & McKay**, of Memphis, Tenn., for appellee.

Argued orally by **Chalmers Potter**, for appellant, and by **J. L. Byrd**, for appellee.

**Smith, C. J.**, delivered the opinion of the court.

This is an action by the appellant against the Yazoo & Mississippi Valley Railroad Company and the Illinois Central Railroad Company for an alleged breach of a contract of employment. On motion of appellees, the appellant's evidence was excluded, and the jury was directed to return a verdict for them, which was accordingly done.

The facts disclosed by the record, out of which the appellant's claimed cause of action arises, are, in substance, as follows: Prior to June, 1926, the Alabama & Vicksburg Railway Company owned and operated a railroad, one of the termini of which was the city of Jackson, Miss., at which place it operated a switching yard. The appellant was employed by that company as a switchman in its Jackson yard; the relation between them being determined by a contract entered into with the company by the Switchmen's Union of North America, of which the appellant was a member. This contract provided for seniority rights of the members of the union employed thereunder, which right of seniority determined the assignment of members of the union under the contract to work for the railroad company. In June, 1926, and thereafter the Yazoo & Mississippi Valley Railroad Company and the Illinois Central Rail-

road Company were both operating railroads running through the city of Jackson, at which place the switching for both roads was done by the Illinois Central Railroad Company under an arrangement between them by which the Yazoo & Mississippi Valley Railroad Company paid the Illinois Central Company its proportionate part of the expenses incurred by it in doing this switching. In June, 1926, the Alabama & Vicksburg Railway Company leased its railroad to the Yazoo & Mississippi Valley Railroad Company. According to the appellant, this lease contract obligated the Yazoo & Mississippi Valley Railroad Company to assume and carry out the contract of the Switchmen's Union of North America with the Alabama & Vicksburg Railway Company, and the relations between the appellees, the evidence of which it will not be necessary to set forth, imposed a similar obligation on the Illinois Central Railroad Company.

It will not be necessary for us to determine whether or not this construction of the lease and of the relations between the appellees is correct, for, if it is, that fact would not affect the conclusion we have here reached.

This switching arrangement between the appellees was continued, and the Illinois Central received into its employment the switchmen, one of whom was the appellant, who had theretofore been working for the Alabama & Vicksburg Railway Company in its Jackson yard.

The Illinois Central Railroad Company on and prior to June, 1926, and thereafter, had a contract with the Brotherhood of Railroad Trainmen which provided for seniority rights of the members of the brotherhood somewhat similar to the seniority rights provided for the members of the Switchmen's Union of North America in the contract of that union with the Alabama & Vicksburg Railway Company. From June, 1926, to November, 1926, the appellant seems to have been given his seniority right under the contract with the Alabama &

Vicksburg Railroad Company. In November, 1926, the Illinois Central, after a conference between its executive officers and those of the Brotherhood of Railroad Trainmen, adopted and published a new seniority roster effective in the city of Jackson, under which the appellant was given the number 57, designating his seniority, when, according to the appellant, as we understand his contention, he should have been given the number 37, the result of which was that he thereafter failed to be called into service for a large number of days extending over the period of time from November, 1926, to October, 1932, when this suit was begun. This roster of November, 1926, came under the observation of the appellant when it was promulgated, and he continued thereafter in the service of the Illinois Central Railroad Company without making any objection to the roster until a comparatively short time before this suit was filed in October, 1932.

Section 22 of the contract between the Switchmen's Union of North America and the Alabama & Vicksburg Railway Company provided, under the heading "Seniority Roster," that: "The General Chairman and Local Chairman shall be furnished a copy of the seniority roster each six (6) months, and a copy shall be posted on the bulletin boards available to all switchmen concerned. Any protest as to the correctness of seniority roster must be made in writing within thirty (30) days. There will be no interchange of seniority between different yards."

No copy of the seniority roster published in November, 1926, was given to either the general or local chairmen of the Switchmen's Union of North America, but the local chairman, McGehee, learned prior to its publication that a new roster would probably be adopted, and that a conference between the executives of the railroad and of the Brotherhood of Railroad Trainmen would be held for that purpose. He appeared at this conference, but was denied admission thereto. He after-

wards made verbal objection thereto, we will assume, to the proper railroad officers, and was informed that the railroad had no contract with the Switchmen's Union of North America. Some time after the publication of this seniority roster, the exact date of which does not appear, the appellant joined the Brotherhood of Railroad Trainmen.

The record presents a number of questions which it will not be necessary for us to answer, for the one now to be set forth will determine the issue irrespective of the others. That question is this: Assuming for the purpose of the argument that the appellees were obligated to perform the contract of the Switchmen's Union of North America with the Alabama & Vicksburg Railway Company, and that this contract inured to the appellant's benefit, did the appellant waive his rights thereunder? Under this assumption, if the appellant was given No. 57 on the roster of November, 1926, when he should have been given the number 37, the Switchmen's Union of North America contract was breached by the appellees when that roster was promulgated and acted on by the Illinois Central Railroad Company; but the breach of a contract by one party thereto can be waived by the other. Was this breach here waived by the appellant? When this roster came under the appellant's observation, instead of protesting and indicating to the appellees that he would claim his rights under that contract, he continued to work under the new seniority roster, and thereby elected to accept it and to work in accordance with its provisions. Had he made such a protest, the Illinois Central would have had an opportunity to revise the roster, if its obligation to the appellant so required, in doing which it would have necessarily displaced the seniority of other switchmen on the roster, to whom it was also under a similar contractual obligation. The effect of the promulgation of this November, 1926, seniority roster was to offer the

appellant and the other switchmen affected thereby a new contract insofar as their relative seniority was concerned, and, where the breach of a contract is followed by the offer of another as a substitute therefor, the acceptance thereof waives the breach of the former. By accepting work under the new roster without protest, the Illinois Central was justified in believing that the appellant would claim only thereunder, and that it could safely deal with its other switchmen on that assumption and accord to them their rights thereunder. This was the ground on which the court below acted.

We have here assumed that McGehee's protest inured to the benefit of the appellant; nevertheless that protest did not relieve the appellant of the effect of his subsequent acquiescence in the new seniority roster. Y. & M. V. R. Co. v. Sideboard, 161 Miss. 4, 133 So. 669, is not in conflict herewith, for there the employee, though continuing to work, did so under protest, indicating at all times that he did not agree to the change which his employer sought to make in his status under the contract.

Affirmed.