CAMPBELL *v.* GULF, MOBILE AND OHIO RAILROAD COMPANY

No. 41953            October 9, 1961            133 So. 2d 396

*Scott & Scott,* Laurel, for appellant.

*Welch, Gibbes & Graves,* Laurel, for appellee.

RODGERS, J.

This suit originated in the Second Judicial District of Jones County, Mississippi, where a declaration was filed by the appellant in a suit against the appellee, Gulf, Mobile and Ohio Railroad Company, a corporation. The appellant alleges that he worked for the defendant up to and including December 31, 1958, and that he retired January 1, 1959. He alleges that he was a foreman mechanic under a contract between the Gulf, Mobile and Ohio Railroad Company and the union to which the appellant belonged, to-wit: "The American Railway Supervisors' Association." The appellant alleges that under this contract the appellant was to be paid time and one-half for all work performed as a working foreman mechanic on days known as "rest days"; that from January 1, 1954, to December 31, 1958, appellant worked 87 rest days each year and that he should have received for said work a total of "$16,449.36, plus interest of $3,092.74, or a total of $19,542.10." The appellant further contends that by virtue of an addition or an adjustment clause to the above contract which was attached to and became a part of the contract as a "cost of living adjustment", the appellant became entitled to fifteen days vacation and for which he should have been paid the sum of $26.66 per day, or a total of $319.90. The defendant Railroad Company demurred to this declaration upon the ground among others that: (1) "The Court does not have jurisdiction of this cause, jurisdiction being vested exclusively in the National Railroad Adjustment Board, pursuant to 45 U.S.C.A., Section 153," and (2) that the agreement filed as an exhibit to the declaration bars this action because the action was not filed with the proper officers within 30 calendar days from the date of the occurrence upon which such claim is based. The demurrer also claims that the court does not have jurisdiction of the party and that the declaration does not state the cause of action.

The demurrer was submitted to the Circuit Judge and from a judgment sustaining the demurred this case has been appealed to this Court.

This case brings into focus Section 153, U.S.C.A., Title 45, in which the Congress established a board known as the National Railroad Adjustment Board and vested this Board with the power to hear and determine "disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, * * *."

It will be noted that this suit at bar is a suit for unpaid wages claimed to have been due to the plaintiff under the contract for work done on "rest days", and for vacation said to be due under the contract and adjustment thereto. It is apparent, therefore, that this case is based upon a contract between the appellant's union and the railroad. In the case of Moore v. Illinois Central Railroad Company, 180 Miss. 276, 176 So. 593, this Court held in a case where a trainman brought a suit for wages, that the Court had jurisdiction to entertain such a suit after the trainman had been arbitrarily discharged by the railroad company.

In the case of Illinois Central Railroad Company v. Bolton (Miss. 1961), 126 So. 2d 524, Judge Arrington, speaking for the Court, said: "Appellee relies on Moore v. Illinois Central Railroad Company, 312 U. S. 630, 61 S. Ct. 754, 85 L. Ed. 1089. In the first place, the Moore case, if not overruled, has been restricted and narrowed in its effect by a number of decisions which are discussed and cited in Illinois Central Railroad Company v. Nelson, 218 Miss. 896, 57 So. 2d 321. We think the Nelson case is decisive of the question now before the Court. Appellee was not wrongfully discharged from his position as was the fact in the Moore case. Appellee bases his suit solely on the union contract, and the loss of his seniority under that contract, and his suit is to recover the wages that have been paid others who, he claims, occupied the

position he should have occupied if appellant had properly applied the union contract as to seniority rights."

The Nelson case mentioned above is a case where Nelson claimed that he was wrongfully withdrawn from the service and deprived of wages he should have earned because the Railroad violated his seniority rights and he asked for a money judgment for such wages and the Court stated in that case that "Congress has specifically provided for a tribunal to interpret contracts such as these in order finally to settle a labor dispute." The Court further stated that: "We are of the opinion in the case at bar that the questions are so intricate and the rights of the National and Local unions and their members, as well as those of plaintiff and defendant, are so intertwined and affected, depending upon the construction and interpretation of the rules and regulations of the Unions, and determination of their powers, and the effect of such interpretation upon the present and future policy of such Unions, that the lower court had no jurisdiction of these matters, and they should be determined by the Railroad Adjustment Board if determined at all."

In the case of Pennsylvania Railroad Company v. Day, Administrator, 360 U. S. 548, 3 L. Ed. 2d 1422, 79 S. Ct. 1312, the Supreme Court of the United States indexed and correlated the cases on the subject of disputes under the labor contract. In our opinion this case is similar to the case at bar. It was a case in which an action was brought in the District Court of New Jersey claiming some $27,000.00 as additional compensation from the Pennsylvania Railroad. The action was brought by one De Priest. While the suit was pending De Priest died and an administrator, a Mr. Day, was substituted in the place of the plaintiff, De Priest. This action was brought in a Federal District Court based upon diversity of citizenship. De Priest claimed that he was a locomotive engineer for the Railroad from 1918 to 1955. He terminated his services with the Railroad by resignation. In the declaration he claimed that he had been required to go

outside of his assigned switching limits from 1000-1500 times, and claimed that the collective bargaining and agreement between the Railroad and the Union provided extra compensation for engineers who were requested to switch outside of their switching limits. He claimed that he had submitted his grievances to the company representatives and they had rejected his claims. He therefore resigned and filed suit. At the time this case was pending there were similar cases pending against the Pennsylvania Railroad, and the District Court stayed proceedings in this suit to await the outcome of the claims before the Railroad Adjustment Board. When these claims were rejected the Day suit was dismissed on the ground that the Board's interpretation was final and binding upon Day. The Court of Appeals reversed the holding of the District Court upon the grounds that De Priest was not a party to these claims and that the District Court had jurisdiction over this claim. The case was then appealed to the United States Supreme Court in which the Court said: ''Since the Board has jurisdiction, it must have exclusive primary jurisdiction. All the considerations of legislative meaning and policy which have compelled the conclusion that an active employee must submit his claims to the Board, and may not resort to the courts in the first instance, are the same when the employee has retired and seeks compensation for work performed while he remained on active service. A contrary conclusion would create a not insubstantial class of preferred claimants. Retired employees would be allowed to bypass the Board specially constituted for hearing railroad disputes whenever they deemed it advantageous to do so, whereas all other employees would be required to present their claims to the Board. This case forcefully illustrates the difficulties of such a construction. Several active workers have had claims similar to that of respondent rejected by the Board. To allow respondent now to try his claim in the District Court would only accentuate the danger of inequality of treatment and its consequent discontent

which it was the aim of the Railway Labor Act to eliminate.''

■■ ■ It is apparent that the question of whether or not the appellant is entitled to vacation pay is also a question to be interpreted under the contract between the Union and the Railroad, and, therefore, the National Railroad Adjustment Board has exclusive jurisdiction not only as to the wages due while the appellant worked with the Railroad Company but also for the vacation earned under said contract. This case is therefore affirmed.

Affirmed.

*McGehee, C.J.,* and *Kyle, Arrington* and *Ethridge, JJ.,* concur.